UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:   GEORGE PRYOR FAISON, II,    Case No. 08-33388-KRH
Chapter 13
Debtor.

## MEMORANDUM OPINION AND ORDER

Before the Court is the objection (the "Objection") of Christine Jackson ("Jackson") to confirmation of the Chapter 13 plan filed by George Pryor Faison, II (the "Debtor"). Hearing was held on the Objection on October 1, 2008 (the "Hearing"), at which the Court heard testimony and the argument of counsel. At the conclusion of the Hearing the Court took the matter under advisement and requested the parties to brief the issues they had presented to the Court for resolution. For the following reasons, Jackson's Objection is sustained, and the Court will deny confirmation of the Debtor's Chapter 13 plan.

On July 20, 2008, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor filed a plan on July 20, 2008, that proposes to pay the trustee $1,900 per month for sixty months (the "Plan").[1] The proposed total payout of $114,000 under the Debtor's Plan is estimated to yield a dividend to the Debtor's unsecured creditors of just three percent.

---

[1] The Debtor's annualized current monthly income listed on line 21 of his Amended Official Form B22C is $95,528.76 which exceeds the median family income of a household of one in Virginia of $46,055. As the Debtor is an above-median-income debtor, 11 U.S.C. § 1325(b)(4)(A)(ii)(I) provides that the applicable commitment period for the Debtor is 60 months.

Jackson is an unsecured creditor of the Debtor.[2]  Section 1324 of the Bankruptcy Code authorizes holders of allowed unsecured claims to object to confirmation of a Chapter 13 plan on grounds that it fails to comply with any of the requirements of 11 U.S.C § 1325.  Jackson filed her Objection to the Debtor's Plan on September 19, 2008.  The Objection is premised on three grounds.  First, Jackson contends that the Plan does not meet the liquidation test of 11 U.S.C. § 1325(a)(4).  Second, she argues that the Plan is not proposed in good faith in violation of 11 U.S.C. § 1325(a)(3).  Finally Jackson maintains that the Plan is under-funded and, therefore, not feasible as required by 11 U.S.C. § 1325(a)(6).[3]

The Objection gives rise to a contested matter under Bankruptcy Rule 9014.  Fed. R. Bankr. P. 3015.  The Court has jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L).  The objecting party has the burden of going forward with the evidence, *In re Fries*, 68 B.R. 676 (Bankr. E.D. Pa. 1986), but the ultimate burden of proof is borne by the Debtor.  *In re Brown*, 244 B.R. 603, 607–08 (Bankr. W.D. Va. 2000).

Jackson has failed to present any evidence from which the Court can conclude that the Plan fails to meet the liquidation test.  To prevail on this point, it must be demonstrated that the unsecured creditors would receive a higher dividend through a Chapter 7 liquidation than unsecured creditors will receive under the proposed Chapter 13 plan.  *See* 11 U.S.C. § 1325(a)(4). The Debtor's schedules reflect that the Debtor has no unencumbered, non-exempt

---

[2]  Jackson filed a proof of claim in the amount of $33,267.56 on July 21, 2008.  The proof of claim was amended on July 22, 2008, as a secured claim by virtue of Jackson's status as a judgment lien creditor.  The Debtor filed an objection to Jackson's proof of claim on July 23, 2008.  By Order entered October 6, 2008, Jackson's claim was disallowed as a secured claim and allowed as a general unsecured claim.

[3]  Feasibility was addressed in a separate objection to confirmation filed by the trustee in a different context—the Debtor's inability to perform.  The Court overruled that objection at the Hearing on the grounds that a debtor in a Chapter 13 case who otherwise is proceeding in good faith ought to be given the opportunity to succeed.  The Court will not revisit that issue here.

assets that would be available to a Chapter 7 trustee for liquidation. The Debtor did schedule an interest in a partnership known as Virginia Mortgage Brokers, LLC ("VMB"), but the Debtor listed the partnership as having only a nominal value of one dollar. Jackson argued that the Debtor's partnership interest in VMB was worth much more than one dollar and that liquidation of that interest may provide a dividend greater than three percent to the unsecured creditors. The undisputed testimony before the Court revealed that VMB is a personal services company. The Debtor's only interest in it derives from income he generates for services he performs. There is no value inherent in the partnership other than the Debtor's productivity in brokering mortgage deals. Without the Debtor, there is no value. The Court finds that there is only nominal value in VMB and certainly no value that a Chapter 7 trustee would be able to realize on behalf of the estate. The Court concludes, therefore, that the Debtor's Plan does comply with the liquidation test of 11 U.S.C. § 1325(a)(4).

Jackson next argues that the Debtor's Plan is not proposed in good faith as the Debtor proposes to pay expenses that are not "reasonably necessary." Jackson maintains that the expenses taken by the Debtor on account of certain secured claims are excessive. Jackson argues that these excessive expenses result in a lower dividend to unsecured creditors. If the Debtor were required to relinquish certain property, such as his home (which is worth far less than the debt securing it), then a greater portion of the funding going into the Debtor's Plan would be available to the unsecured creditors. Jackson protests that the Debtor is financing a lavish lifestyle to the detriment of his unsecured creditors. Relying on *In re Wilcox*, 251 B.R. 59, 68 (Bankr. E.D. Ark. 2000), Jackson argues that the small payout to unsecured creditors provides indicia of the Debtor's unfair manipulation of the Bankruptcy Code and its fundamental

3

principles. In essence, Jackson's bad faith objection is premised upon the failure of the Debtor's Plan to comply with the requirements of 11 U.S.C. § 1325(b)(1)[4].

As Jackson will not be paid in full under the Debtor's Plan, the Bankruptcy Code requires that the Debtor must commit all of his projected disposable income throughout the applicable commitment period to the repayment effort. *In re Buck,* No. 07-31512-KRH, 2007 WL 4418145, at *1 (Bankr. E.D. Va. Dec. 14, 2007). The Debtor's projected disposable income is his current monthly income less amounts reasonably necessary to be expended, as calculated on Official Form B22C, multiplied by the applicable commitment period. *Id*. Section 1325(b) sets forth detailed definitions under which the calculation of disposable income is to be made.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), "*disposable income*" meant "income which is received by the debtor and which is not reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2) (2000).[5] BAPCPA altered the definition of "*disposable income*" set forth in § 1325(b) of the Bankruptcy Code. Now "*disposable income*" is defined as "*current monthly income* received by the debtor . . . less *amounts reasonably necessary to be expended*." 11 U.S.C.A. § 1325(b)(2) (Pamph. 1 to Supp. 2007). "*Current monthly income,*" as now defined in § 101(10A) of the Bankruptcy Code, equals the average monthly income received by a debtor from all sources during the six-month period preceding the petition date. For above-median-

---

[4] Section 1325(b)(1) of the Bankruptcy Code prohibits the Court from confirming a plan over the objection of a holder of an allowed unsecured claim unless :

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

[5] It was left to the courts to make adjustments where expenses were found to be unreasonable, unnecessary or excessive. These adjustments were made on a subjective basis and the standards upon which they were based were not applied consistently from one court to the next.

income debtors "*amounts reasonably necessary to be expended . . .* shall be determined in accordance with [the means test set forth in] subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3).[6] A debtor is required to file Official Form B22C to reflect the statutory calculation of his disposable income. *See* Interim Bankr. R. 1007(b)(6). Line 59 of the Debtor's Official Form B22C that was filed on the petition date reflected that the Debtor's monthly disposable income under § 1325(b)(2) was $229.40 per month. The Debtor filed an Amended Official Form B22C on September 27, 2008, in which the Debtor calculates his monthly disposable income at a negative $2,548.31.[7] Thus, the Debtor does not appear to have any monthly disposable income.

> As the court observed in *In re Barr*:
>
> it appears that Congress intended to adopt a specific test to be rigidly applied rather than a standard to be applied according to the facts and circumstances of the case. Calculating "disposable income" for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support.

341 B.R. 181, 185 (Bankr. M.D.N.C. 2006). The court in *Barr* reasoned that Congress intended to create a bright-line rule that takes away judicial discretion in determining projected disposable income for individual debtors.[8] "The use of 'shall' in section 1325(b)(3) is mandatory and leaves

---

[6] BAPCPA did not change the subjective method for determining amounts reasonably necessary to be expended for below-median-income debtors.

[7] Absent this amendment, the Debtor's Plan would have failed the disposable income test. Section 1325(b)(1)(B) requires that a debtor's projected disposable income over the applicable commitment period "be applied to make payments to *unsecured* creditors under the plan" (emphasis added). Although the Debtor's Plan calls for monthly payments to the trustee of $1,900, almost all of that goes to fund secured debt. The Plan would have had to fund payments of at least $13,764 on account of unsecured debt ($229.40 multiplied by 60 months). This would have represented a dividend closer to 11% for unsecured creditors rather than the 3% for which the Plan provided. Neither the trustee nor Jackson has challenged the Debtor's recalculation of his projected disposable income.

[8] Judge Tice similarly indicated that Congress intended to remove discretion from courts:
> [T]he court believes that Congress indicated a desire to implement a bright line rule when enacting the means test, and use of the Internal Revenue Service's guidance documents to

5

no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." *Id.* Because courts are left with no discretion in applying § 1325(b), there will be instances where using the figure from a debtor's Official Form B22C will leave them with either less than they actually need to make the plan payments, or more, depending on the debtor's income and expenses from Schedules I and J.

The Debtor has done what Congress mandated that he do—he has listed expenses for monthly payments on account of secured debts pursuant to 11 U.S.C. § 707(b)(2)(A)(iii). This alone cannot be the predicate for a finding of bad faith.[9] "If the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement. He has done everything Congress asked him to do." *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007). The Court will not find that the Debtor acted not in good faith by doing what Congress has allowed in BAPCPA, even if the expenses taken result in a lower dividend to unsecured creditors than they would receive if the Debtor were forced to relinquish property that is worth far less than the debt securing it.

The Court notes that if the Debtor is unsuccessful in getting a Plan confirmed, he can convert his case to one under Chapter 7. With negative current monthly income, an above-median-income debtor will be able to pass the means test and thus be eligible to remain in Chapter 7. However, there would be no distribution to unsecured creditors in Chapter 7. In this

---

        disallow the expense would instead return the courts to a flexible analysis of expenses requiring
        excessive investigation into IRS principles and practices.
*In re Lynch*, 368 B.R. 487, 491 (Bankr. E.D. Va. 2007).

[9] That is not to suggest that a Debtor's technical compliance with the means test equates to a finding of good faith. The United States Court of Appeals for the Fourth Circuit has adopted a totality of the circumstances test for bad faith. *See Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982). However, Jackson's argument is premised upon the Debtor's deduction of expenses that Congress has allowed him to make. That alone cannot constitute bad faith.

6

context, the Debtor's desire to repay a dividend of 3% to his unsecured creditors is indicia of his proceeding in good faith. Jackson has failed to present credible evidence that the Debtor has failed to comply with the good faith requirement of 11 U.S.C. § 1325(a)(3).

Finally, Jackson argues that the Plan is not feasible because it is under-funded. Jackson points out that the Plan does not provide enough funds to disburse what is required under its terms. The total amount to be paid into the Plan is $114,000. The amounts to be paid on account of administrative and secured claims is as follows: (1) $9,120 for the trustee's commission, (2) $56,817.77 in arrears on the first mortgage,[10] (3) $12,579 in arrears on the second mortgage, (4) $1,800 in debt payments for home furnishings, (5) $9,500 in debt payments on a BMW, (6) $30,000 in debt payments for a second BMW, and (6) $2,500 in attorney's fees. The sum of those payments is $122,316.77. The proposed disbursements under the Plan exceed the total amount to be paid into the Plan by $8,316.77. This accounts for no dividend to the unsecured creditors. When the 3% dividend to unsecured creditors is factored in, the amount by which the Plan is under-funded increases to $12,168.68. Therefore, the Plan as proposed does not pass the feasibility test under 11 U.S.C § 1325(a)(6).

In consideration whereof, it is

**ORDERED** that the objection to confirmation filed by Christine Jackson is **SUSTAINED**, without prejudice to the Debtor's right to file an amended Plan.

ENTERED_____

                                                    /s/ Kevin R. Huennekens
                                      UNITED STATES BANKRUPTCY JUDGE

---

[10] The secured lender holding a first mortgage on the Debtor's residence filed a proof of claim listing a total of $56,817.77 in arrears. The Debtor estimated this figure to be $35,303.00 in his plan. The Court has used the figure listed in the proof of claim, as no objection has been filed to it and the proof of claim is deemed allowed pursuant to 11 U.S.C. § 502(a).

Copies to:

James H. Wilson, Jr.
4860 Cox Road, Suite 200
Glen Allen, VA  23060

Wm. C. Parkinson, Jr.
Wm. C. Parkinson, Jr., P.C.
5310 Markel Road, Suite 200
Richmond, VA  23230

Carl M. Bates
P. O. Box 1819
Richmond, VA  23218